**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION**

| | |
|---|---|
| **SCOTT ROGERS**, on behalf of himself and all others similarly situated,<br><br>                           Plaintiff,<br><br>v.<br><br>**CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY,**<br><br>                       Defendant. | **CASE NO: 1:21-cv-226**<br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.      On November 17, 2020, Plaintiff Scott Rogers replied to an email from Defendant's employee, writing:

> I am no longer interested in Choice. I have been harassed all day by your company and I am not interested in signing up for a service that employs such predatory tactics.

2.      Defendant's response was swift and to the point:

> Excuse me for living.

3.      As if to double down, Defendant followed up this response minutes later—in the same email chain—with another email advertising its services and <u>called Plaintiff to advertise its services less than 45 minutes later</u>.

4.      Defendant and companies like it are the reason the Telephone Consumer Protection Act ("TCPA") exist and remains a vital consumer protection tool.

5.      The cavalier attitude demonstrated in Defendant's response to one of Plaintiff's many do-not-call requests is hardly out of character, if the numerous lawsuits (almost 40 since 2017) and public complaints are to be believed.

6.     According to those complaints, Defendant's response to do-not-call requests ranges from ignoring them, to hanging up when the request is made, to rude comments like that made to Plaintiff, to *attempting to solicit payment for placement on the do-not-call list*, as was the case in this BBB complaint (left September 3, 2020):

> On one call I spoke with a rep and told them to stop calling (9/2)… On the most recent call (9/3), after I told them to stop calling, the rep told me the way to get off the phone list was to sign up for their service. I told him that's not how it works. I said I would report the company if they continued contacting me. He was defiant and asked who I would report them to. At this point, I consider their continued contact to be harassment and want it stopped.

7.     This specific action arises out of Defendant, CHW Group, Inc.'s ("Defendant"), practice of sending autodialed telemarketing text messages and placing autodialed and prerecorded voice telemarketing calls to individuals without prior express written consent, after those individuals revoked their consent, without the policies and procedures required to be implemented prior to making telemarketing calls, and to individuals on the National Do-Not-Call Registry—violations of three separate provisions of the TCPA, 47 U.S.C. § 227, *et seq.*

8.     Accordingly, Plaintiff brings this TCPA action on behalf of himself and six classes of similarly situated individuals under 47 U.S.C. §§ 227(b) and 227(c).

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

10.     This Court has jurisdiction over Defendant because Defendant conducts significant business transactions in this District and has committed tortious acts in this District.

11.     Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District. and because some of the wrongful conduct giving

2

rise to this case occurred in, was directed to, and/or emanated from this District.

**PARTIES**

12.     Plaintiff Rogers is, and at all times mentioned herein was, a citizen and resident of Big Rapids, Michigan.

13.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.     Defendant is, and at all times mentioned herein was, a New Jersey corporation with its principal place of business at 1090 King Georges Post Road, Edison, New Jersey 08837.

15.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

**THE TCPA**

16.     The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

17.     Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

18.     First, Section 227(b) of the TCPA prohibits initiating a telemarketing call using an automatic telephone dialing system or prerecorded voice without the prior express written consent of the called party.

19.     "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9).

3

20.     This written agreement must <u>clearly and conspicuously</u> disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(9)(i)(A-B).

21.     Consent can also be revoked, and most calls using an autodialer or pre-recorded voice, even if not telemarketing, violate the § 227(b) if made after such a revocation.

22.     A violation of § 227(b) carries statutory damages of $500 to $1,500 per call.

23.     Second, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

24.     These regulations are codified at 47 CFR 64.1200(c)(1-2).

25.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

26.     A violation of 47 C.F.R. § 64.1200(c) carries additional statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

27.     Third, the TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

28.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines

are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

29.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

30.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

31.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

32.     These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

33.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

34.     These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 CFR

---

[1]   The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of

64.1200(d).

35.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

36.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

37.    These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

38.    Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

//

//

---

encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

## PLAINTIFF ROGERS FACTUAL ALLEGATIONS

39.     Plaintiff Rogers is the sole and primary user of a cellular telephone number ending in 9154.

40.     Plaintiff Rogers' telephone number ending in 9154 has been on the National Do-Not-Call Registry since November 8, 2016.

41.     On approximately November 14, 2020, Plaintiff filled out Defendant's quote form.

42.     Upon information and belief, this quote form was located at https://www.chwprice.com/a/a100/index.php?utm_source=hmfm&utm_campaign=10795592 ("CHW Price Site").

43.     Plaintiff filled in and submitted the quote form on his cellular telephone.

44.     Shortly after, Plaintiff began receiving calls from Defendant, some of which used live persons and some of which used prerecorded or artificial voice calls.

45.     Beginning with the second call on November 16, Plaintiff informed each caller on any call that he answered that he was no longer interested in Defendant's services and asked Defendant to stop calling him.

46.     On November 17, Plaintiff also called Defendant back and relayed the same.

47.     Nevertheless, the calls continued.

48.     Plaintiff continued to request that Defendant stop calling him and explain that he was no longer interested.

49.     For example, on November 16, 2020 (at 4:24 PM in response to an email from Account Executive for Defendant, Marc Rabie), November 17 (at 10:33 AM in response to an email from Sales Executive for Defendant, Harry Sakkal), November 17 (at 3:53 pm in response

to an email from Promotions Manager for Defendant, Igal Tadjiev), and November 17 (at 4:31

pm in response to an email from Sales Manager for Defendant Andrew Marks), Plaintiff wrote:

> I am no longer interested in Choice. I have been harassed all day by your company and I am not interested in signing up for a service that employs such predatory tactics.

50.     Of these emails, only Mr. Tadjiev responded, two minutes after Plaintiff's email,

writing "Excuse me for living."

51.     Plaintiff responded at 3:57, writing:

> Don't harass potential customers. It's highly unprofessional and instantly turns them off from wanting to employ your services. When a potential client says that they need more time or that they aren't interested, respect that.

52.     In response, at 3:59, as if to further rub it in, Defendant, through its employee Igal

Tadjiev, responded by sending Plaintiff details of Defendant's 5 Year Total Plan.

53.     The calls resumed 45 minutes later.

54.     Fed up, on November 17, 2020, Plaintiff filed a complaint with the Better

Business Bureau ("BBB").

55.     In this complaint, Plaintiff wrote:

> I used the Choice Home Warranty site to obtain an appliance warranty/repair plan quote two days ago. Since that day I have received approximately 4-5 calls and just as many emails each day, even after indicating that I was no longer interested in their services due to their predatory tactics. Today when I again responded to an email that I was no longer interested in their services, I was met with the response, "Excuse me for living," by Igal Tadjiev. I was also contacted via email by reps Harry Sakal and Marc Rabie by email in addition to the reps who contacted me by phone whose names I don't have on hand. This type of harassment and responses are highly unprofessional. When a potential customer indicates that they need more time to make a decision or indicates that they are no longer interested, you should not continue to harass them with different reps.

56.     The following day, Defendant (signing its emails as "The CHW Team")

responded, stating it sent an expedited request to its IT department to place Plaintiff's information on the do not call/do not email list, and asked for "up to 14 business days for Plaintiff's information to process"—which would have been December 8, 2020.

57.     Plaintiff responded by writing:

> I am rejecting this response because: Your employees have been rude to me when I tell them I am no longer interested, multiple employees contact me in quick succession, and leave messages, even after speaking with the individuals and telling them to no longer contact me. This isn't just an "inconvenience," it is borderline harassment and completely unprofessional behavior. Fourteen more days of multiple calls a day, multiple messages a day, multiple emails a day is unacceptable.

58.     Defendant responded nearly identically as it did previously.

59.     The communications, of course, did not stop after the 14 business days.

60.     Plaintiff received calls from Defendant on (including, but not limited to) January 13, February 12, and February 15.

61.     Plaintiff also received text message communications from Defendant on January 13, 2021 and February 15, 2021.

62.     In the January 13 text message, from telephone number 208-649-6123, Defendant wrote:

> Scott, I'm Jen w/ Choice Home Warranty. Still need a home warranty? I can offer your 1st month at no-cost if we talk today! Call me! Text no to end.

63.     It is clear this text came from Defendant because, in addition to Defendant's self-identification in this text message, calling back this number connects to Defendant (as discussed in more detail below).

64.     Plaintiff responded "No." to this text.

65.     Plaintiff subsequently received a text on February 15, from telephone number

9

347-467-4988, which said:

> Scott, did you ever get a home warranty? If you didn't, let's set up a time
> to chat. $0 for the first month!

66.     As discussed in more detail below, calling back this number connects to Defendant.

67.     In sum, Plaintiff received the following calls and texts:

| Date | Number | Type |
| --- | --- | --- |
| 11/16/2020 | 270-594-5944 | Call |
| 11/16/2020 | 231-751-0197 | Call |
| 11/16/2020 | 231-751-0197 | Call |
| 11/16/2020 | 231-751-0197 | Call |
| 11/16/2020 | 231-751-0197 | Call |
| 11/17/2020 | 231-751-0197 | Call |
| 11/17/2020 | 231-751-0165 | Call |
| 11/18/2020 | 231-751-0165 | Call |
| 11/18/2020 | 225-427-9398 | Call |
| 11/19/2020 | 732-314-4559 | Call |
| 11/19/2020 | 732-314-4559 | Call |
| 11/20/2020 | 732-314-4596 | Call |
| 11/20/2020 | 732-314-5220 | Call |
| 11/23/2020 | 732-314-6135 | Call |
| 11/23/2020 | 732-314-6135 | Call |
| 1/13/2021 | 208-649-6123 | Call |

| 1/13/2021 | 208-649-6123 | Text |
| 2/12/21 | 347-467-4988 | Call |
| 2/15/2021 | 347-467-4988 | Text |
| 2/15/21 | 347-467-4988 | Call |

68.    Upon information and belief, there are additional calls not listed here that will be found through discovery.

## **IDENTIFICATION OF DEFENDANT AS THE CALLER**

69.    Plaintiff was able to identify the calls as coming from Defendant through several means.

70.    First, the telephone numbers from which the calls came ring back to and connect to Defendant when called back.

71.    For example, as of March 2, 2021, calling telephone number 347-467-4988 (which made the February 12 call) connects to a recording that states "Hi, you've reached Choice Home Warranty, thanks for calling back!" and invites the caller to press 1 "to go over your custom home warranty quote now".

72.    Pressing 1 connects the caller to an automated message thanking the caller for calling Choice Home Warranty, informing the caller that the call will be recorded, and connecting the caller to an agent who identifies himself or herself as "Choice Home Warranty."

73.    The same identical process is true of telephone number 208-649-6123.

74.    Similarly, calling telephone number 231-751-0197, which made several of the calls in November 2020, connects the caller to an automated message thanking the caller for calling Choice Home Warranty, informing the caller that the call will be recorded, and connecting the caller to an agent who identifies himself or herself as "Choice Home Warranty."

75.     This same identical process is true of telephone number 231-751-0165, 225-427-9398, and 270-594-5944.

76.     Other calls to numbers that had previously called Plaintiff ring directly to hold music before connecting to someone who identifies himself or herself as "Choice Home Warranty."

77.     This is true for telephone numbers 732-314-4559, 732-314-4596, 732-314-5220 and 732-314-6135.

78.     In all instances, calling the number back connects to a recording or person that at every step of the way identifies himself or herself as being "Choice Home Warranty."

79.     Second, on the incoming calls and texts themselves, the caller (prerecorded or otherwise) identified himself or herself as Choice Home Warranty.

80.     For example, the prerecorded calls began "[t]his is Choice Home Warranty" before going into the purpose of the call (to see whether Plaintiff was seeking a quote for a home warranty).

81.     The calls from live persons would begin similarly, with the caller stating "I am [name] with Choice Home Warranty …"

82.     See also the text messages quoted above, the first of which explicitly identifies it as coming from Choice Home Warranty.

83.     Third, an email was typically sent from Defendant to Plaintiff simultaneously with (or immediately before or after) such calls.

84.     For example, the email chain discussed above between Plaintiff and Defendant's employee Igal Tadjiev began with an email sent on November 17 at 3:51 PM—the exact same time Plaintiff received a call from Defendant's 231-751-0165 telephone number.

85.     Other examples of this include:

| Number | Date | Time of Call | Time of Email | Email Sender |
|---|---|---|---|---|
| 231-751-0197 | Nov. 16, 2020 | 3:57 PM | 3:57 PM | Marc Rabie mrabie@choicehome warranty.com |
| 231-751-0197 | Nov. 17, 2020 | 9:47 AM | 9:47 AM | Harry Sakkal hsakkal@choicehome warranty.com |

86.     Fourth, while Plaintiff subsequently requested that Defendant stop placing calls to him, the calls from Defendant began only after (and immediately after) Plaintiff filled out the form on Defendant's website.

## **NATURE OF THE CALLS**

87.     All of the calls discussed herein were made to encourage Plaintiff's purchase of Defendant's home warranty service.

88.     Though the wording varied, the substance of the calls echoed the substance of the text messages quoted above.

89.     The calls were therefore all "telemarketing" and had a "telemarketing purpose" under 47 C.F.R. § 64.1200(f)(13).

90.     The calls after Plaintiff asked Defendant to stop calling also qualify as "telephone solicitations" under 47 C.F.R. § 64.1200(f)(15).

91.     Furthermore, each of these calls used either an automatic telephone dialing system or an artificial or prerecorded voice.

92.     For the calls made using an artificial or prerecorded voice—including, but not limited to, the call on February 12—Plaintiff is aware that these telephone calls used a prerecorded or artificial voice message because of his familiarity with normal human interaction,

intonation, manners of speaking, and his inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

93.     Plaintiff received other pre-recorded calls from Defendant but does not presently recall the specific dates of those calls.

94.     For the calls and texts made using an automatic telephone dialing system (all calls), Plaintiff is aware that they used such equipment for several reasons.

95.     First, when Plaintiff answered such calls, he was met with a brief and unnatural pause before the caller spoke, suggestive of an automatic telephone dialing system that waits until the recipient answers before transferring to a live agent.

96.     Second, the calls occurred on a very consistent and set schedule, suggesting automated blasts. For example, the January 13 call (which was followed by a text message) and the February 15 call (which was followed by a text message) were both made to Plaintiff at exactly 9:33 AM.

97.     Relatedly, several of the calls, as detailed above, were accompanied simultaneously by an email, suggesting the calls and emails were on a linked "blast" scheduler.

98.     Third, one of the text messages invited Plaintiff to respond "no" to stop the texts, which suggests the texts were sent and handled via automated means.

99.     Finally, Defendant required intervention of its "IT department" to "stop" further calls to Plaintiff, suggesting a high degree of technological involvement in the outbound calls to Plaintiff.

## **CONSENT**

100.     As discussed above, all of Defendant's calls and texts qualify as "telemarketing" and some qualify as "telephone solicitations."

14

101.    Because Defendant's text messages and calls constitute telemarketing, Defendant was required to obtain prior express written consent from the persons to whom they made these calls and texts.

102.    Even prior to Plaintiff's requests that Defendant stop calling, Defendant did not have prior express written consent.

103.    "Prior express written consent" is specifically defined by statute as:

[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(9).

104.    This agreement must "include a **clear and conspicuous** disclosure informing the person signing that … such a person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice" and that "[t]he person is not required to sign the agreement … as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(9)(i).

105.    "Clear and conspicuous", in turn, is defined as

notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures.

47 C.F.R. § 64.1200(f)(3).

106.    None of Defendant's disclosures qualify.

107.    On the fourth page of Defendant's CHW Price Site quote form (after entering zip code, name, and email address), visitors are presented with the following page:



108.    This disclosure is insufficient to constitute "prior express written consent" for several reasons.

109.    First, its placement and stylization serve to hide it against the rest of the page.

110.    It is placed *below* the button required to submit the form.

111.    It is also in small white font against a busy background that is extremely difficult to read.

112.    In addition, on some mobile devices, the keyboard and/or autofill boxes hide the disclosure altogether:

16



113.   This is not just a device problem—it is due in large part to Defendant's decision to have the big red "Call" button rise with the keyboard (which raises the question of why it did not do the same with the disclosure).

114.   The problem is also apparent on an iPhone:



115.    While on desktop the keyboard does not block the disclosure, the disclosure may

not be visible depending on your monitor resolution and browser window size:



116.    As such, it is possible—if not likely—that a person could fill out Defendant's quote form without *ever seeing* the disclosure related to "express consent" for phone calls, through no fault of their own.

117.    Similar problems exist on other sites which Defendant owns and operates. For example, on https://www.choicehomewarranty.com/get-a-quote/start.php ("CHW Main Site"), a user filling out the quote form on a phone can fill out all of the information and submit a quote without ever scrolling far enough to see the disclosure, as seen here:

19



118.    The same is true of filling out the form on a computer, where depending on your monitor resolution and whether your browser is full screen or not, the disclosure may not be visible:



119.    Even if a user scrolls down far enough, the disclosure on the CHW Main Site is stylized in a light gray font against a white background, sandwiched between (on desktop) a bright orange button, a bold "questions?" item, and normal black font copyright and disclaimer information.



120.    On the phone, it is styled similarly, but it is sandwiched below the bright orange

button, and above a multitude of award logos, as seen below:



121.    Notably, when reviewing the source code for the CHW Main Site page design, this disclaimer is stylized in "text-muted", with a font size chosen to always be 80% the size of other text on the page. No other text on the page is stylized in this manner.

122.    In addition, none of Defendant's disclosures (whether the CHW Price Site, the CHW Main Site, or other sites independently reviewed) require any checkbox or similarly direct or affirmative manifestation of assent.

123.    Second, none of Defendant's disclosures disclose the possibility of artificial or pre-recorded voice calls.

124.    As discussed, "prior express written consent" requires the agreement to inform the consumer of the possibility of "telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice."

125.    The disclosure on Defendant's CHW Price Site states (with emphasis added):

> By entering my information and submitting for a free quote, I am providing express consent to be contacted via email, phone and text, including my wireless phone number, regarding product and servicing information **using automated technology**, even if it is registered on a federal, state, or corporate do not call list. I am not required to provide this consent in order to obtain goods or services from Choice Home Warranty. If my area is not covered, I may be referred to alternate trusted provider.

126.    The disclosure on Defendant's CHW Main Site states (with emphasis added):

> By entering my information and submitting for a free quote, I am providing express consent to be contacted via email, phone and text, including my wireless phone number, regarding products, service, discounts, promotions, offers, (including third-party discounts, offers, and promotions) and information **using automated technology**, even if it is registered on a federal, state, or corporate do not call list. I am not required to provide this consent in order to obtain goods or services from Choice Home Warranty. If my area is not covered, I may be referred to alternate trusted provider. Click Here to view full privacy policy.

127.    These disclosures say *nothing* about pre-recorded or artificial voice calls, instead mentioning only "automated technology."

128.    None of Defendant's other sites reviewed provide any differently or specify prerecorded/artificial voice.

129.    Third, Defendant's click-through privacy policy—linked to, upon information and belief, only on the CHW Main Site—does not fare much better.

130.    Defendant's privacy policy states:

If you gave us your email address, Choice Home Warranty may use it from time to time to notify you of such things as new services, products, service offers, discounts, promotions, (including third-party discounts, offers, and promotions) to confirm transactions or information, or to assist with the completion of a quote. If you do not wish to be contacted by email for non-policy related communications, you may select the "unsubscribe" link at the bottom of any Choice Home Warranty email you receive. If you gave us your phone number, Choice Home Warranty may use it from time to time to notify you of such things as new services, products, service offers, discounts, promotions, (including third-party discounts, offers, and promotions) or to confirm transactions. Choice Home Warranty **may also leave pre-recorded[sic] on any number** you provided to us.

131.   Here, the privacy policy says nothing about using automatic telephone dialing systems and omits the words after "pre-recorded" to indicate *what* can be "left" pre-recorded.

132.   Rather than pedantic, this is key: if the privacy policy was intended to give Defendant the right to leave pre-recorded telemarketing messages, it would have made more sense to include it in the previous sentence (e.g. "may use it from time to time to notify you, using an automatic telephone dialing system or artificial or prerecorded voice, of such things as…").

133.   Instead, Defendant's privacy policy sets the "pre-recorded" language off in its own sentence, with an "also", indicating it is intended for something other than the telemarketing purposes described in the preceding sentence (for example, it may have been intended to say "pre-recorded voicemails related to account servicing" or "pre-recorded claims information".)

134.   The use of "pre-recorded" here versus "automated technology" in the on-site disclosure also suggests Defendant understood the difference between the terms "automated" and "pre-recorded."

135.   In short, Defendant's disclosures are hidden, both in format and placement.

136.   These disclosures are not apparent to the reasonable consumer and are therefore

24

not clear and conspicuous.

137.   As such, all of Defendant's telemarketing calls to persons who provided their information on any of Defendant's quote forms are made without prior express written consent.

138.   Further, and separately, at no point do any of Defendant's disclosures on any of its sites inform the consumer clearly and conspicuously of the possibility of pre-recorded or artificial voice telemarketing calls.

139.   It is thus not apparent to a reasonable consumer that they were consenting to pre-recorded or artificial voice calls.

140.   As such, all of Defendant's pre-recorded or artificial voice telemarketing calls are made without prior express written consent.

## DO-NOT-CALL LIST

141.   The TCPA prohibits making "any telephone solicitation" to a telephone number on the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c).

142.   All of Defendant's calls and texts to Plaintiff after he revoked consent were "telephone solicitations."

143.   Plaintiff's number was on the National Do-Not-Call Registry prior to the calls and texts.

144.   While the exact number of calls to Plaintiff's telephone number will be determined in discovery, as pled above, Plaintiff has received more than two such telemarketing calls and text messages in a 12-month period after revocation, as required by 47 U.S.C. § 227(c) for violations of § 227(c).

145.   Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to an additional $500 per text message.

25

146.    Plaintiff is entitled to an additional $1,500 per text message if Defendant's actions are found to be knowing or willful.

## POLICIES AND PROCEDURES

147.    As discussed, the TCPA prohibits making "any call for telemarketing purposes" unless the caller has met the affirmative defense of instituting certain minimum standards for maintaining an internal do-not-call list.

148.    These standards include, among others, keeping a written policy, available upon demand, for maintaining a do-not-call list, training personnel engaged in telemarketing on the existence and use of the do-not-call list, and recording and honoring "do not call" requests. 47 CFR § 64.1200(d).

149.    At the time of its calls to Plaintiff, Defendant did not have such a written policy, nor did it train personnel engaged in telemarketing on the existence and use of the do-not-call list.

150.    Plaintiff requested the written policy via telephone on March 3, 2021, by calling Defendant's telephone number 1-888-531-5403.

151.     On this call, Plaintiff spoke with Defendant's employee "Dennis."

152.    On this call, Plaintiff repeatedly asked Dennis for a copy of Defendant's do-not-call policy.

153.    Defendant's employee Dennis indicated repeatedly that he was unable to provide Plaintiff with the policy.

154.    During this call, Defendant's employee Dennis also placed Plaintiff on hold so he could call someone else to ask if a copy of Defendant's do-not-call policy could be provided to Plaintiff.

155.    When Dennis came back on the line, he stated again that he could not give Plaintiff a copy of the policy.

156.    At this point, with the conversation going nowhere, Plaintiff ended the call.

157.    As such, even if Defendant did have a such a policy in place at the time of the calls, Defendant's failure and refusal to produce that policy make it not "available upon demand".

158.    Furthermore, Defendant's employees are not trained on honoring "do not call" requests or any internal "do not call policy".

159.    To the contrary, Defendant refused to honor multiple do-not-call requests from Plaintiff—including one made through the BBB—and responded rudely to one of Plaintiff's requests with "Excuse me for living."

160.    Furthermore, Defendant did not record and/or honor "do not call" requests, as seen in Plaintiff's futile efforts to stop the calls.

161.    Plaintiff is not alone. The internet is full of complaints about Defendant's failure to honor do-not-call requests.

162.    On Yelp,[2] where Defendant has one star out of five, numerous reviewers complain about Defendant's calling practices. For example:

> THEY WON'T STOP CALLING!! I decided not to choose then for our home warranty. I receive about 4 calls a day. I have asked them REPEATEDLY to remove me from their call list.... Yet, I continue to receive calls.
>
> Take it from me- Don't give them your number or email unless you are absolutely sure you want them.
>
> Choice, if you are reading this... STOP FREAKING CALLING ME!

---

[2] https://www.yelp.com/biz/choice-home-warranty-austin?q=list

- Carol F., Tucson AZ, September 21, 2020

---

this company SUCKS!!! I somehow got a calling list and they call me multiple times a day! I've asked multiple people to remove my # but it never happens…

- Nikki O., Carlsbad, CA, September 1, 2020

163.    On the BBB website,[3] Defendant has a 1.07/5 rating and 7,701 complaints closed in the last three years, and 3,605 complaints closed in the last 12 months.

164.    Many of these complaints are related to Defendant's calling practices. For example:

… On one call I spoke with a rep and told them to stop calling (9/2)… On the most recent call (9/3), after I told them to stop calling, the rep told me the way to get off the phone list was to sign up for their service. I told him that's not how it works. I said I would report the company if they continued contacting me. He was defiant and asked who I would report them to. At this point, I consider their continued contact to be harassment and want it stopped.

Complaint made September 3, 2020

---

My contract is expiring today and the onslaught of phone calls and emails has been UNRELENTING. I have received upwards of 5-6 calls per day and multiple emails per day trying to get me to renew my policy. The sales reps that I did talk to were pushy and aggressive and not professional at all. When I would tell them to cease contact with me completely, they would just hang up the phone.

Complaint made May 1, 2020

---

---

[3] https://www.bbb.org/us/nj/edison/profile/home-warranty-plans/choice-home-warranty-0221-90048733/complaints

28

I've asked the representatives to stop calling my number. I have blocked several of the numbers and they continue to call from different numbers. When ever I speak with a live person to ask them to stop calls because I no longer want to due business with the company they just hang up. My most recent call was today at 3:34 PM central time from ###-###-####. I think this name was Al. 2/2###-###-#### at 3:34 central time.

Complaint made February 24, 2020

---

  put in a request for information on the website ************************** earlier this month, as I was researching costs for home warranties . Within a minute, my phone was ringing with a pushy salesperson trying to sell me their plan. I have been receiving non-stop phone calls, morning, noon, and night since this time. When I block the number, they just call from a different number. When I request to be taken off of the calling list, they just hang up on me.

Complaint made January 24, 2020

---

I have received non stop calls from Choice Home Warranty after filling out information for an online quote. I have asked numerous times to place me on the do not contact list and stop calling me. Only to get harassed with an other new number from this company. This type of sale practice is ridiculous. Today alone I received six calls, on the hour every hour, by a different number. I blocked the number but they still could leave voicemails. This has to stop!

Complaint made January 2, 2020

165.    In fact, over the past three years, of the 178 "Advertising/Sales" complaints with complaint details available on BBB, almost half appear to involve unwanted communications after requests that Defendant stop contacting them, and most of these appear to involve phone calls and emails (rather than just emails).

166.    There is no other explanation for the consistency in Defendant's refusal to honor do-not-call requests (and the frequency with which people complain that when such requests are made, Defendant hangs up) than a lack of meaningful training and/or policies and procedures on

documenting and honoring do-not-call requests.

167. Accordingly, all of Defendant's telemarketing calls to anyone, in the absence of such a policy, and regardless of consent or equipment used, violate 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

## DEFENDANT'S LIABILITY

168. Defendant failed to obtain prior express written consent from Plaintiff prior to placing telemarketing calls and texts to Plaintiff's cellular telephone number using an automatic telephone dialing system. This constitutes a violation of 47 U.S.C. § 227(b).

169. Defendant failed to obtain prior express written consent from Plaintiff prior to placing telemarketing calls to Plaintiff's telephone number using an artificial or pre-recorded voice. This constitutes a violation of 47 U.S.C. § 227(b).

170. Defendant continued calling Plaintiff using an automatic telephone dialing system after he asked Defendant to stop. This constitutes a violation of 47 U.S.C. § 227(b).

171. Defendant continued calling Plaintiff using a pre-recorded or artificial voice after he asked Defendant to stop. This constitutes a violation of 47 U.S.C. § 227(b).

172. For violations of 47 U.S.C. § 227(b), Plaintiff is entitled to a minimum of $500 per call and text message.

173. Plaintiff is entitled to $1,500 per text message if Defendant's actions are found to be knowing or willful.

174. Defendant placed two or more telephone solicitations to Plaintiff, whose number was on the National Do-Not-Call Registry at the time of the calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

175. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to an

additional $500 per text message through 47 U.S.C. § 227(c).

176.     Plaintiff is entitled to an additional $1,500 per text message if Defendant's actions are found to be knowing or willful.

177.     Defendant placed two or more telemarketing calls to Plaintiff, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

178.     Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an additional $500 per text message through 47 U.S.C. § 227(c).

179.     Plaintiff is entitled to an additional $1,500 per text message if Defendant's actions are found to be knowing or willful.

180.     Plaintiff has suffered concrete harm because of Defendant's unwanted and unsolicited telemarketing text messages and calls, including, but not limited to:

- Device storage;

- Data usage;

- Lost time tending to and responding to the unsolicited calls and text messages;

- Invasion of Privacy;

- Nuisance; and

- Increased risk of all of the above.

181.     These concrete harms, among others, are sufficient for Article III standing.

## CLASS ACTION ALLEGATIONS

182.     Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of six classes, preliminarily defined as follows:

Since March 9, 2017, Plaintiff and all persons to whose telephone number Defendant CHW Group, Inc. placed (or had placed on its behalf) a telemarketing call using an artificial or pre-recorded voice when the number to which the call was placed was obtained through one of Defendant's websites.

("Prerecord Class")

Since March 9, 2017, Plaintiff and all persons to whose telephone number Defendant CHW Group, Inc. placed (or had placed on its behalf) a telemarketing call using an artificial or pre-recorded voice after the person asked Defendant to stop calling, or words to that effect.

("Prerecord Revocation Class")

Since March 9, 2017, Plaintiff and all persons to whose cellular telephone number Defendant CHW Group, Inc. placed (or had placed on its behalf) a telemarketing call or text using an automatic telephone dialing system when the number to which the call was placed was obtained through one of Defendant's websites.

("ATDS Class")

Since March 9, 2017, Plaintiff and all persons to whose cellular telephone number Defendant CHW Group, Inc. placed (or had placed on its behalf) a telemarketing call or text using an automatic telephone dialing system after the person asked Defendant to stop calling, or words to that effect.

("ATDS Revocation Class")

Since March 9, 2017, Plaintiff and all persons within the United States to whose telephone number Defendant CHW Group, Inc. placed (or had placed on its behalf) two or more telemarketing calls or messages in a 12-month period after the person asked Defendant to stop calling, or words to that effect, and the telephone number to which the calls or messages were sent was on the National Do-Not-Call Registry at the time of the messages.

("Registry Class")

Since March 9, 2017, Plaintiff and all persons within the United States to whose telephone number Defendant CHW Group, Inc. placed (or had placed on its behalf) two or more telemarketing calls or messages in a 12-month period.

("Policy Class")

(These classes are collectively referred to herein as the "Classes.")

183. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

184. The putative Class members for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

185. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

   a. The time period(s) during which Defendant placed its calls and text messages;

   b. The telephone numbers to which Defendant placed its calls and text messages;

   c. The name, address, and email address associated with the telephone numbers to which Defendant placed its calls and text messages;

   d. The source of the telephone numbers to which Defendant placed its calls and text messages;

   e. The purposes and scripts for Defendant's calls and text messages;.

186. The Classes are comprised of thousands of individuals nationwide.

187. There are common questions of law and fact affecting the rights of putative, including, *inter alia*, the following:

   a. Whether Defendant or someone acting on its behalf places telemarketing calls and text messages;

   b. Whether Defendant obtains prior express written consent;

33

c.   Whether Defendant or someone acting on its behalf places its calls and text messages using an automatic telephone dialing system;

d.   Whether Defendant or someone acting on its behalf places its calls using an artificial or pre-recorded voice;

e.   Whether Defendant or the entity with which it contracts places solicitation calls and text messages to telephone numbers registered on the National Do-Not-Call Registry;

f.   Whether Defendant had the required policies and procedures prior to making telemarketing calls;

g.   Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

h.   Whether Defendant should be enjoined from engaging in such conduct in the future.

188.    Plaintiff is a member of the Classes in that Defendant placed two or more calls or texts for telemarketing purposes, some of which used a pre-recorded voice and some of which used an automatic telephone dialing system, in a one-year period to his telephone number, without his prior express written consent, after he asked Defendant to stop, and while his telephone number was on the National Do-Not-Call Registry.

189.    Plaintiff's claims are typical of the claims of the putative Class members in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

190.    Plaintiff and all putative Class Members have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to

Defendant's unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy.

191.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

192.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent himself and the Classes.

193.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

194.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

195.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

196.    Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)
### (On Behalf of Plaintiff and the Prerecord Class)

197.    Plaintiff and the proposed Prerecord Class incorporate the foregoing allegations as if fully set forth herein.

198.    Defendant made, or had made on its behalf, telemarketing telephone calls to Plaintiff's and putative Prerecord Class Members' telephone numbers without prior express written consent.

199.    These telemarketing telephone calls used an artificial or prerecorded voice.

35

200.    Defendant did not obtain express written consent prior to making these telemarketing calls using an artificial or pre-recorded voice to putative Prerecord Class members.

201.    The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

202.    Plaintiff and putative Prerecord Class Members are entitled to an award of $500 in statutory damages for each text message, pursuant to 47 U.S.C. § 227(b)(3)(B).

203.    Plaintiff and putative Prerecord Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of Plaintiff and the Prerecord Revocation Class)**

204.    Plaintiff and the proposed Prerecord Revocation Class incorporate the foregoing allegations as if fully set forth herein.

205.    Defendant made, or had made on its behalf, telemarketing telephone calls to Plaintiff's and putative Prerecord Revocation Class Members' telephone numbers after Plaintiff and putative Prerecord Revocation Class Members told Defendant to stop calling, or words to that effect.

206.    These telemarketing telephone calls used an artificial or prerecorded voice.

207.    The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

208.    Plaintiff and putative Prerecord Revocation Class Members are entitled to an award of $500 in statutory damages for each text message, pursuant to 47 U.S.C. § 227(b)(3)(B).

209.    Plaintiff and putative Prerecord Revocation Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

### THIRD CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)
### (On Behalf of Plaintiff and the ATDS Class)

210.    Plaintiff and the proposed ATDS Class incorporate the foregoing allegations as if fully set forth herein.

211.    Defendant made, or had made on its behalf, telemarketing telephone calls to Plaintiff's and putative ATDS Class Members' cellular telephone numbers without prior express written consent.

212.    These telemarketing calls used an automatic telephone dialing system.

213.    Defendant did not obtain express written consent prior to making these telemarketing calls using an automatic telephone dialing system to putative ATDS Class members.

214.    The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

215.    Plaintiff and putative ATDS Class Members are entitled to an award of $500 in statutory damages for each text message, pursuant to 47 U.S.C. § 227(b)(3)(B).

216.    Plaintiff and putative ATDS Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

### FOURTH CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)
### (On Behalf of Plaintiff and the ATDS Revocation Class)

217.    Plaintiff and the proposed ATDS Revocation Class incorporate the foregoing allegations as if fully set forth herein.

218.    Defendant made, or had made on its behalf, telemarketing telephone calls to Plaintiff's and putative ATDS Revocation Class Members' telephone numbers after Plaintiff and putative ATDSd Revocation Class Members told Defendant to stop calling, or words to that effect.

219.    These telemarketing telephone calls used an automatic telephone dialing system.

220.    The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

221.    Plaintiff and putative ATDS Revocation Class Members are entitled to an award of $500 in statutory damages for each text message, pursuant to 47 U.S.C. § 227(b)(3)(B).

222.    Plaintiff and putative ATDS Revocation Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

**FIFTH CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

223.    Plaintiff and the proposed Registry Class incorporate the foregoing allegations as if fully set forth herein.

224.    Defendant made, or had made on its behalf, telephone calls and text messages constituting telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

225. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the text messages.

226. Plaintiff and putative Registry Class Members each received two or more such calls and text messages in a 12-month period.

227. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call and text message pursuant to 47 U.S.C. § 227(c)(5).

228. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call and text message made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SIXTH CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Policy Class)

229. Plaintiff and the proposed Policy Class incorporate the foregoing allegations as if fully set forth herein.

230. Defendant placed numerous calls and texts for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

231. Defendant did so despite not having a written policy pertaining to "do not call" requests.

232. Defendant did so despite not having such a policy available "upon demand."

233. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

234. Defendant did so despite not recording or honoring "do not call" requests.

235. Defendant placed two or more telemarketing telephone calls and texts to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

236. Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

237. Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. §§ 227(b) and (c);

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages; and

F. Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** March 9, 2021
/s/ Gabriel S. Sanchez_____
Gabriel S. Sanchez, Esquire
**THE MAUL LAW GROUP, PLLC**
2401 Camelot Ct. SE, Suite M
Grand Rapids, MI 49546
Tel: 616.202.2505
gsanchez@maullaw.com


/s/ Jeremy M. Glapion_____
Jeremy M. Glapion, Esquire
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com
(*Pro Hac Vice* to be filed)