IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ROGERS, on behalf of himself and all other similarly situation,

    Plaintiff,

v.

CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY,

    Defendant.

Case No. 1:21-cv-00226-PLM-PJG

Judge: Hon. Paul L. Maloney

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS/STRIKE**

**TABLE OF CONTENTS**

Page

I. PLAINTIFF FAILS TO DEMONSTRATE ARTICLE III STANDING ........................... 1
II. PLAINTIFF FAILS TO PLEAD PLAUSIBLE §227(B) CLAIMS .................................. 4
    A. The At-Issue Calls/Texts Were Transactional/Informational In Nature ................ 4
    B. Plaintiff "Prerecorded Voice" Counterarguments Fail ........................................... 5
    C. Plaintiff's Consent/Revocation Counterarguments Fail ......................................... 8
III. PLAINTIFF FAILS TO PLEAD PLAUSIBLE §227(C) CLAIMS ............................... 10
IV. COUNT II IS DUPLICATIVE OF COUNT I .................................................................. 12
V. THE SAC SHOULD BE DISMISSED WITH PREJUDICE .......................................... 12
VI. PLAINTIFF'S IMPROPER ALLEGATIONS SHOULD BE STRICKEN .................... 13

# TABLE OF AUTHORITIES

Page

## CASES

*Allard v. SCI Direct, Inc.*,
   2017 U.S. Dist. LEXIS 107106 (M.D. Ten. July 10, 2017) ........................................................9

*Amann v. Low VA Rates, LLC*,
   2020 WL 6317598 (S.D. Ohio Oct. 28, 2020), *report and rec. adopted*,
   2020 WL 6709895 (Nov. 16, 2020) ......................................................................................12

*ARcare, Inc. v. Centor U.S. Hldgs, Inc.*,
   2017 WL 3621809 (N.D. Ohio July 18, 2017) ........................................................................1

*Bishop v. Gosiger, Inc.*,
   692 F.Supp.2d 762 (E.D. Mich. 2010)..................................................................................1, 5

*Brownback v. King*,
   141 S.Ct. 740 (2021)..................................................................................................................3

*Cataldi v. Ocwen Loan Servicing, LLC*,
   2017 WL 5903440 (E.D. Mich. Nov. 30, 2017) ....................................................................10

*Charvat v. DFS Servs. LLC*,
   781 F.Supp.2d 588 (S.D. Ohio 2011) ....................................................................................11

*Charvat v. GVN Michigan, Inc.*,
   561 F.3d 623 (6th Cir. 2009) ............................................................................................11, 12

*Colliton v. Cravath, Swaine & Moore*,
   2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) .....................................................................5, 6

*Couponcabin LLC v. Savings.com, Inc.*,
   2016 WL 3181826 (N.D. Ind. June 8, 2016) .........................................................................10

*De Angelis v. Nat'l Ent. Grp., LLC*,
   2018 WL 11316612 (S.D. Ohio July 25, 2018)....................................................................2, 3

*Dolemba v. Kelly Servs., Inc.*,
   2017 U.S. Dist. LEXIS 13508 (N.D. Ill. Jan. 31, 2017)...........................................................5

*Douek v. Bank of Am. Corp.*,
   2017 WL 3835700 (D.N.J. Sept. 1, 2017) ...............................................................................6

*Eldridge v. Cabela's Inc.*,
   2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) ......................................................................12

*Elexco Land Servs., Inc. v. Hennig*,
   2011 WL 9368970 (W.D.N.Y. Dec. 28, 2011).........................................................................6

*Fang v. Holder*,
   2011 WL 2784496 (N.D. Ohio July 14, 2011) ........................................................................2

*Forney v. Hair Club for Men Ltd., Inc.*,
   2017 WL 4685549 (C.D. Cal. June 26, 2017) ...............................................................7, 8, 9

# TABLE OF AUTHORITIES
(continued)

Page

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*,
  491 F.3d 320 (6th Cir. 2007) ..................................................................................2, 3

*Gorss Motels, Inc. v. Safemark Sys., LP*,
  931 F.3d 1094 (11th Cir. 2019) ......................................................................................9

*Greenberg v. Life Ins. Co. of Va.*,
  177 F.3d 507 (6th Cir.1999) ........................................................................................10

*Haber v. Rabin*,
  2016 WL 3217869 (N.D. Ohio June 10, 2016)..........................................................1, 2

*Hayward v. Cleveland Clinic Found.*,
  759 F.3d 601 (6th Cir. 2014) .........................................................................................5

*Hernandez v. Select Portfolio, Inc.*,
  2015 WL 3914741 (C.D. Cal. June 25, 2015)...............................................................2

*Hicks v. Alarm.com Inc.*,
  2020 WL 9261758 (E.D. Va. Aug. 6, 2020) .................................................................7

*Hill v. Homeward Residential*,
  799 F.3d 544 (6th Cir. 2015) .........................................................................................5

*Huang v. Presbyterian Church*,
  346 F. Supp. 3d 961 (E.D. Ky. 2018) ........................................................................5, 6

*Johansen v. Vivant, Inc.*,
  2012 WL 6590551 (N.D. Ill. Dec. 18, 2012)..............................................................7, 8

*Laccinole v. Appriss, Inc.*,
  453 F. Supp. 3d 499 (D.R.I. 2020)............................................................................7, 12

*Lennartson v. Papa Murphy's Holdings, Inc.*,
  2016 U.S. Dist. LEXIS 725 (W.D. Wash. Jan. 5, 2016) ...............................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014)...................................................................................................4

*Lucas v. Chance*,
  121 F.App'x 77 (6th Cir. 2005)......................................................................................5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).......................................................................................................4

*Lundbom v. Schwan's Home Serv., Inc.*,
  2020 WL 2736419 (D. Or. May 26, 2020) .................................................................10

*Lutman v. Harvard Collection Servs.*,
  2015 WL 4664296 (M.D. Fla. Aug. 6, 2015)..............................................................12

*Mohamed v. Off Lease Only, Inc.*,
  2018 WL 398326 (S.D. Fla. Jan. 12, 2018) ..................................................................2

# TABLE OF AUTHORITIES
(continued)

Page

*Morris v. Modernize, Inc.*,
  2018 WL 7076744 (W.D. Tex. Sept. 27, 2018) ...................................................................9

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) .............................................................................................5, 6

*O'Bryan v. Holy See*,
  556 F.3d 361 (6th Cir. 2009) .............................................................................................1

*Ohio Nat. Life Ins. Co. v. U.S.*,
  922 F.2d 320 (6th Cir. 1990) .............................................................................................1

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*,
  2004 WL 5700631 (C.D. Cal. Aug. 31, 2004) ...................................................................6

*Padilla v. Whetstone Partners, LLC*,
  2014 WL 3418490 (S.D. Fla. July 14, 2014) .....................................................................7

*Perri v. Rescue 1 Fin., LLC*,
  2015 U.S. Dist. LEXIS 95717 (C.D. Cal. July 22, 2015) ..................................................9

*Perrong v. S. Bay Energy Corp.*,
  2021 WL 1387506 (E.D. Pa. Apr. 13, 2021) ...................................................................12

*Pietzak v. Microsoft Corp.*,
  2015 U.S. Dist. LEXIS 165204 (C.D. Cal. Nov. 17, 2015) ...............................................5

*Pietzak v. Microsoft Corp.*,
  2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ...................................................................5

*Pinkard v. Wal-Mart Stores, Inc.*,
  2012 U.S. Dist. LEXIS 160938 (N.D. Ala. Nov. 9, 2012) .................................................5

*Resnick v. Patton*,
  258 F.App'x. 789 (6th Cir. 2007) ...................................................................................1, 5

*Roberts v. Hamer*,
  655 F.3d 578 (6th Cir. 2011) .............................................................................................3

*Rodriguez v. Premier Bankcard, LLC*,
  2018 U.S. DIst. LEXIS 149225 (N.D. Ohio Aug. 31, 2018) .............................................5

*Roller v. Litton Loan Servicing*,
  2011 WL 2490597 (E.D. Mich. June 21, 2011) ................................................................2

*Royal Primo Corp. v. Whitewater W. Indus., Ltd*,
  2016 WL 1718196 (N.D. Cal. Apr. 29, 2016) ...................................................................5

*SaJo, LLC v. Woolf*,
  2012 WL 5874355 (N.D. Ohio Nov. 19, 2012) .................................................................2

*Saunders v. Sunrun, Inc.*,
  2020 WL 4601636 (N.D. Cal. Aug. 11, 2020) ................................................................4, 5

# TABLE OF AUTHORITIES
(continued)

Page

*Soular v. Northern Tier Energy LP*,
  2015 U.S. Dist. LEXIS 112294 (D. Minn. Aug. 25, 2015) ........................................................9

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ....................................................................................................................3

*Superior MRI Svs., Inc. v. Alliance Healthcare Svs., Inc.*,
  778 F.3d 502 (6th Cir. 2015) ....................................................................................................3

*White v. Mortg. Elec. Registration Sys., Inc.*,
  2016 WL 8671218 (E.D. Mich. Sept. 9, 2016), *report and rec. adopted*, 2017 WL
  655621 (Feb. 17, 2017), *aff'd sub nom.*, 2018 WL 2084234 (6th Cir. Mar. 9, 2018) .................5

*Wick v. Twilio Inc.*,
  2016 WL 6460316 (W.D. Wash. Nov. 1, 2016) ........................................................................5

*Williams v. CitiMortgage, Inc.*,
  498 F.App'x 532 (6th Cir. 2012) ...........................................................................................1, 2

*Winner v. Kohl's Dept. Stores, Inc.*,
  2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) ............................................................................9

## STATUTES

47 U.S.C. § 227(b) .............................................................................................................. passim

47 U.S.C. § 227(b)(1)(A)(iii) ....................................................................................................12

47 U.S.C. § 227(c) ............................................................................................................... passim

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(d)(3) .........................................................................................................11

18 F.C.C. Rcd. 14014 (2003) ....................................................................................................11

30 F.C.C. Rcd. 7961 (2015) ..................................................................................................4, 10

## RULES

Fed. R. Civ. P. 12 ......................................................................................................................12

Fed. R. Civ. P. 12(b)(1) .......................................................................................................1, 2, 3

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1, 3, 5, 12

As shown below, Plaintiff's Opposition (ECF No. 21) to CHW's Motion to Dismiss/Strike (ECF No. 19, "Motion") his Second Amended Complaint ("SAC") fails to refute the well-supported grounds for relief presented by CHW's Motion. Therefore, the Motion should be granted.

## I. PLAINTIFF FAILS TO DEMONSTRATE ARTICLE III STANDING.

To begin, Plaintiff argues, *inter alia*, that he: (i) "specifically pleads that he did not provide prior express written consent" or "he revoked that consent"; and (ii) "further alleges that Defendant's refusal to honor his do-not-call requests was the result of its failure to maintain the policies, procedures, and training required by law." Page.ID.257. Thus, Plaintiff posits the Court must accept those allegations as true when ruling upon CHW's "facial" standing challenge. *Id*. (citing *O'Bryan*). Plaintiff is wrong.

On the one hand, Plaintiff's argument on this point, and his Opposition as a whole, mostly just regurgitates or attempts to recast his deficiently-pled allegations without well-developed (or, in some instances, any) argument or citation to pertinent authority, and thus should be rejected on its face. *E.g., Bishop v. Gosiger, Inc.,* 692 F.Supp.2d 762, 774 (E.D. Mich. 2010); *Resnick v. Patton,* 258 F.App'x. 789, 793, n.1 (6th Cir. 2007); *ARcare, Inc. v. Centor U.S. Hldgs, Inc.,* 2017 WL 3621809, at *1, n.1 (N.D. Ohio July 18, 2017). On the other, it is well-accepted that "a court need ***not*** feel constrained" to accept as true any allegations "***that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.***" *Williams v. CitiMortgage, Inc.,* 498 F.App'x 532, 536 (6th Cir. 2012) (citation omitted, emphasis added).[1]

As applied here, CHW demonstrates in its Motion and further below how Plaintiff's SAC is

---

[1] Though *Williams* is a 12(b)(6) ruling, the same standard of review applies to CHW's facial standing challenge under 12(b)(1). *E.g., Ohio Nat. Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir. 1990); *Haber v. Rabin,* 2016 WL 3217869, at *2 (N.D. Ohio June 10, 2016).

replete with allegations directly contradicting his consent/revocation and internal DNC allegations, among others. PageID.220, 226-229, 230-232, 246; PageID.222-225 (discussing contradictory allegations suggesting he did *not* receive "prerecorded" calls). The Court need not accept those contradictory, not-well-pleaded allegations as true when ruling on CHW's Motion. *See Williams* and *Haber*, *supra*; PageID.225 (citing *Hernandez* and *Roller* (dismissing where complaint "allege[d] materially contradictory facts")). Plaintiff does not take this into account and his Opposition ultimately does not reconcile these contradictions, which render his consent/revocation and internal DNC allegations inherently implausible and show he lacks an Article III injury-in-fact.

Plaintiff further argues CHW's "factual" standing challenge is "improper" because his "receipt of an artificial or prerecorded voice call [from CHW] is an element of his § 227(b)" claims and irrelevant to his § 227(c) claims. PageID.258 (citing *Gentek*). He is incorrect on several levels:

First, courts have held a plaintiff's actual *receipt* of an alleged violative call/text is *not* necessary to show a TCPA *violation*, but **is** necessary for *standing*. *E.g., Mohamed v. Off Lease Only, Inc.*, 2018 WL 398326, at *2 (S.D. Fla. Jan. 12, 2018). Consequently, Plaintiff's "receipt" of the at-issue calls is not an "element" of his TCPA claims.

Second, Plaintiff does not cite any controlling authority where a court held that questions relating to the existence of *Article III standing* were inextricably intertwined with the merits of an underlying claim so as to preclude a 12(b)(1) motion. That is because courts in the Sixth Circuit routinely adjudicate 12(b)(1) factual attacks on Article III standing at the pleadings stage. *E.g., De Angelis v. Nat'l Ent. Grp., LLC,* 2018 WL 11316612, at *4–5 (S.D. Ohio July 25, 2018); *SaJo, LLC v. Woolf,* 2012 WL 5874355, at *2-4 (N.D. Ohio Nov. 19, 2012); *Fang v. Holder*, 2011 WL 2784496, at *2-4 (N.D. Ohio July 14, 2011).

Third, the jurisdictional dispute in *Gentek* turned on the interpretation of a phrase in the

statute conferring federal question removal jurisdiction—*i.e.,* it was a **statutory** standing issue, not constitutional. *See* 491 F.3d 320, 329-31 (6th Cir. 2007). But the question of statutory standing "is analytically distinct from the question of whether a federal court has subject-matter jurisdiction to decide the merits of a case" under Article III. *Roberts v. Hamer,* 655 F.3d 578, 580 (6th Cir. 2011). *See also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 126 n.2 (1998) (the "Article III requirement of remediable injury in fact … has nothing to do with the text of the statute relied upon"). Here, CHW does not dispute federal question jurisdiction or the interpretation of the TCPA's text on this point, but rather whether Plaintiff was **injured by CHW** because competent extrinsic evidence shows he did not receive any "prerecorded" calls from CHW as alleged. PageID.246, ¶ 7 (according to its business records, "Plaintiff did not receive any artificial or prerecorded voice messages from CHW"); PageID.259 ("Plaintiff pleads [only CHW] was the caller") (citing PageID.163-164, ¶¶ 69-86). Thus, the Court should rule the "facts necessary to sustain [subject matter] jurisdiction do not implicate the merits of [Plaintiff's] claim[s]" here. *De Angelis,* 2018 WL 11316612, at *4 (quoting *Gentek*, 491 F.3d at 330). *See also Brownback v. King,* 141 S.Ct. 740, 749, n.8 (2021) ("[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, **the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both**.") (emphasis added).

Fourth, to defeat CHW's factual challenge, Plaintiff must "prove the existence of subject-matter-jurisdiction by a preponderance of the evidence" and is "***obliged*** to submit facts through ***some evidentiary method*** to sustain his burden of proof." *Superior MRI Svs., Inc. v. Alliance Healthcare Svs., Inc.*, 778 F.3d 502, 504 (6th Cir. 2015) (emphasis added). The Opposition provides none.

Fifth, CHW's factual challenge is indeed relevant to his §227(c) DNC claims. It is axiomatic that the Article III "causation" element requires that the "injury in fact" be "fairly traceable" to the

***defendant's* conduct** and not the independent actions of some third party not before the court. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiff alleges he never provided his "consent" or "invitation or permission" for 227(b) or (c) purposes for any calls, prerecorded or not. *E.g.,* PageID.166, ¶ 96; PageID.176, ¶ 135. Thus, for any at-issue "prerecorded" call that also allegedly violated the DNC rules, Plaintiff lacks standing under both 227(b) and (c), as his injury is not fairly traceable to CHW for such calls based on the undisputed evidence CHW presented.

## II. PLAINTIFF FAILS TO PLEAD PLAUSIBLE §227(B) CLAIMS.

### A. The At-Issue Calls/Texts Were Transactional/Informational In Nature.

Plaintiff argues, without citing authority, it "does not make sense" that the at-issue "calls were merely transactional or informational because [he] inquired" about a quote. PageID.260. As CHW demonstrates, numerous courts have held otherwise. PageID.227 (citing various authorities); *Saunders v. Sunrun, Inc.,* 2020 WL 4601636, at *3–4 (N.D. Cal. Aug. 11, 2020) (collecting cases).

*Saunders* is instructive. There, the plaintiff alleged he filled out an online form requesting a price quote for the defendant's products and the at-issue texts were sent in response. *Id.* at *1. Applying the same FCC Order and some of the same cases cited in CHW's Motion, the *Saunders* court ruled that, because the at-issue texts "were sent 'in fulfillment of the consumer's request'" for a quote, they "did not constitute telemarketing or advertising" under the TCPA, and only "prior express consent" was needed. *Id.* at *4 (quoting 30 F.C.C. Rcd. 7961, 8015 (2015)).[2] Plaintiff's SAC presents the same factual scenario here. *See* PageID.159, ¶¶ 42-44.

Plaintiff's attempts to distinguish CHW's authorities on this point (*see* PageID.260-61) fail.

---

[2] Though the court found the plaintiff provided prior express consent by voluntarily providing his number to the defendant, it ruled there were insufficient facts alleged to determine whether his revocation was adequate. *Id*. at *4. That is not true here, as CHW demonstrates. PageID.228-29.

For example, CHW cites *Hill*, *Dolemba*, *Rodriguez,* and *Pinkard* primarily for the basic propositions that "prior express consent" is needed for "informational" or "transactional" calls, need not be written, can be obtained when a consumer voluntarily provides his number, and represents a complete defense to a 227(b) claim warranting dismissal under Rule 12(b)(6). *See* PageID.226-227. Plaintiff's Opposition does not argue otherwise. Further, in *Wick*, the court held that a text/call made to fulfill the plaintiff's online request for a product sample did not constitute "telemarketing" because they related to a transaction the plaintiff initiated, like the court in *Saunders*. *See* 2016 WL 6460316, at *1-3 (W.D. Wash. Nov. 1, 2016). Likewise, the plaintiff in *Pietzak* indeed argued the defendant did not obtain "prior express written consent"; but that court ruled it was the "[p]laintiffs who ***initiated*** the receipt of the text messages" and, in so doing, "not only unequivocally expressed their interest in learning more about Microsoft's promotional offers, but they also provided their consent to receive that ***information*** through text messaging." 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015) (emphasis added). Thus, "prior express written consent" was irrelevant there.

B. **Plaintiff "Prerecorded Voice" Counterarguments Fail.**

Plaintiff fails to refute CHW's prerecorded voice arguments. For example, he argues CHW may not "rely on allegations in the previous complaint[s]" because "amended pleadings supersede original pleadings." PageID.263 (quoting *Hayward*). Again, this ignores CHW's arguments that it is proper for the Court to consider contradictory allegations in his prior pleadings when determining the plausibility of the allegations in his SAC under Rule 12(b)(6), and that the Court need not accept the contradictory allegations in the SAC as true when doing so. *See* PageID.215, n.4 & PageID.224, n.13 (citing *Royal*, *White*, *Huang*, *Colliton*).[3] By not addressing them, Plaintiff has conceded these points. *See Bishop* and *Resnick, supra*; *Lucas v. Chance*, 121 F.App'x 77, 79 n.2 (6th Cir. 2005).

---

[3] *See also NicSand, Inc. v. 3M Co*., 507 F.3d 442, 458 (6th Cir. 2007).

5

Additionally, Plaintiff argues the phrase "informing each caller" as alleged in his prior pleadings "plainly refers only to those calls on which there was someone to inform." PageID.264. What Plaintiff actually alleged was: "Beginning with the second call on November 16, Plaintiff *informed <u>each</u> caller on <u>any</u> call that he answered* that he was no longer interested in Defendant's services and *asked* Defendant to stop calling him." Page ID.7 ¶ 45 (original); PageID.57 ¶ 47 (first amended) (emphasis added). As worded, this alone suggests he *spoke to a <u>live</u> person on <u>every</u> at-issue call*,[4] which negates any inference that the calls were "prerecorded" as CHW demonstrates. Page.ID.224-225. It was only after CHW pointed out this inherently-implausible contradiction in its previous dispositive motion that Plaintiff added the phrase "on which there was a live person with whom Plaintiff could speak" to his SAC simply hoping to avoid dismissal,[5] which is improper. *See* PageID.224, n.13 (citing *Huang*, *Colliton*); *NicSand*, *supra*. Plaintiff does not demonstrate otherwise; and this Court need (and should) not accept this new "sham" allegation as true.

Plaintiff further argues CHW "points to nothing that requires the exact language of a call to be pled to demonstrate that the calls were prerecorded." PageID.262. Yet, the Motion demonstrates how alleging the content of calls—such as whether they were "scripted or *impersonal*," "*generic*" or "conveyed an *identical* message in a *uniform voice*, rhythm, and intonation"—is necessary, if not critical, to adequately plead "prerecorded" voice use under the TCPA. PageID.223 (quoting various cases); *see also Douek v. Bank of Am. Corp.*, 2017 WL 3835700, at *2–3 (D.N.J. Sept. 1, 2017).

---

[4] *E.g., Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 2004 WL 5700631, at *13 (C.D. Cal. Aug. 31, 2004) (defining "each" as meaning "every"); *Elexco Land Servs., Inc. v. Hennig,* 2011 WL 9368970, at *3 (W.D.N.Y. Dec. 28, 2011) (defining "any" as meaning "all" or "every" *without limitation*) (applying common definitions, citations omitted).

[5] Of course, CHW's Motion clearly points out this contradictory allegation almost immediately. PageID.217 & n.7. Thus, Plaintiff's suggestion CHW has acted in "bad faith" is nonsense.

Moreover, Plaintiff largely ignores (thereby again conceding)[6] CHW's arguments that: (i) the ***targeted and personalized*** nature of the alleged messages, along with other contradictory allegations in the SAC, preclude any inference the calls were "prerecorded"; and (ii) it defies common sense to infer CHW would use a ***generic*** message to fulfil a ***specific*** request for a price quote. PageID.223.

Plaintiff's attempt to distinguish the foregoing authorities (PageID.263) fails. For starters, Plaintiff ignores *Hicks* and *Laccinole*. Further, the plaintiff in *Forney* alleged that "[w]hen she answered the phone, [she] heard an ***automated message***"—*i.e.,* a prerecorded or artificial voice in violation of §227(b); but, in dismissing, the court held that "[s]uccessful TCPA complaints allege that the ***message*** they received were ***scripted or impersonal***, from an obviously automated number, formatted in code, or similarly factual details" and the plaintiff alleged no such details. 2017 WL 4685549, at *1-2 (C.D. Cal. June 26, 2017) (emphasis added). Thus, *Forney* was not limited to just ATDS use, as Plaintiff represents. The court there also held "[w]here allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, ***and may, in fact, strike the changed allegations as 'false and sham.'***" *Id*. at *3 (emphasis added). *Forney* belies Plaintiff's arguments and supports dismissal.[7]

Similarly, in *Padilla,* the court noted the plaintiff "d[id] not elaborate on the content of the pre-recorded message" and, dismissing, suggested he should have "detail[ed] … the content of the pre-recorded messages (i.e. ***were they identical messages?***)." 2014 WL 3418490, at *2 (S.D. Fla. July 14, 2014) (emphasis added). And in *Johansen*, the court held, in full, that "a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he

---

[6] At best, Plaintiff curtly argues "[a] computer-generated voice can easily say someone's name on an artificial voice call." PageID.262, n.4. The SAC alleges no such facts.

[7] Plaintiff faults CHW for using the correct statutory term "prerecorded" rather than "automated" when quoting *Forney* while he simultaneously argues that CHW's TCPA disclosure was not clear because it says CHW may use "automated technology" to make calls. He cannot have it both ways.

7

attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded…." 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012). In this case, Plaintiff does not allege a "robotic" voice or generic/identical content, and he contradictorily alleges various inherently implausible "facts" in his SAC and in prior complaints suggesting he only spoke to live persons on every call. *E.g.*, PageID.217-218, 224-225 & nn. 7 & 13. Again, the Opposition does not reconcile these or other contradictions or offer any contrary authority. *See* PageID.262.[8]

    C.    **Plaintiff's Consent/Revocation Counterarguments Fail.**

Plaintiff's arguments on "prior express written consent" (PageID.264-69) likewise fail.

First, CHW demonstrates that no consent was needed because Plaintiff's contradictory allegations suggest the at-issue calls were not prerecorded (and Plaintiff no longer alleges autodialer use); thus, the calls did not require any form of consent under §227(b). *See* PageID.225-26. As shown above, Plaintiff' Opposition makes no meaningful effort to reconcile the implausible factual contradictions in or between his pleadings, let alone to refute CHW's argument or authorities on this point. Because his consent was not required,[9] and Plaintiff does not demonstrate otherwise in his pleadings or Opposition, Plaintiff's consent and revocation arguments are irrelevant.

Second, as discussed above, CHW argues only "prior express consent" would have been needed here (if at all) because the calls were not "telemarketing" as they were sent in response to a request for information as part of a transaction Plaintiff initiated. Again, beyond just summarizing

---

[8] At best, Plaintiff summarily argues that his "allegation that the wording of the calls varied from the text messages" is not a contradiction. *Id*. When read in proper context, that allegation suggests the wording of ***each call varied from every other call*** and from the texts. PageID.165, ¶ 88.

[9] This applies to Plaintiff's §227(c) claims, as only "telephone solicitations" may result in a violation of that provision. And even then, only "prior express invitation or permission"—which is less stringent than "prior express written consent," does not have any disclosure requirements, CHW's webform meets this standard in any event—is needed. *See* PageID.230-31.

his defective allegations (*see* PageID.260), Plaintiff does not refute this or provide any contrary authority. Thus, the more stringent "prior express written consent" standard is inapplicable here. And Plaintiff does not dispute CHW's webform meets the lower "prior express consent" standard.

Third, Plaintiff's primary argument on this front is that CHW's webform **generally** referred to "automated technology"—not ***specifically*** to "prerecorded or artificial voice" calls. PageID.265-266. However, the Motion demonstrates: (i) "agreements need not use magic words" to establish TCPA-compliant consent (PageID.228, quoting *Gorss*); (ii) courts have found disclosure language far less prominently-placed and specific than CHW's to be "clear and conspicuous" for "prior express written consent" (*id.*, citing *Morris* and *Winner*); and (iii) *Forney*, which is also discussed further above, shows courts consider "prerecorded or artificial voice" calls to be a form of "automated" technology under the TCPA. Plaintiff does not address these points or provide contrary authority. Moreover, the "artificial or prerecorded voice" and autodialer restrictions fall under the same subsection entitled "Restrictions on the Use of ***Automated*** Telephone Equipment" (47 U.S.C. §227(b), emphasis added)), which destroys Plaintiff's baseless notion that is "nothing 'automated' inherent in prerecorded or artificial voices." PageID.266.

Fourth, Plaintiff's few authorities on this point are distinguishable and inapposite. *See* PageID.265-266. Indeed, none stand for the proposition that prerecorded calls are not a form of "automated" technology or that TCPA disclosures must specifically use the word "prerecorded." *Allard* (a summary judgment decision) involved a mailer that had no form of disclosure at all. *Perri* is a minute order with no meaningful analysis, and the disclaimer there said nothing about "automated" or "prerecorded" calls. *See* Case No. 15-cv-287 (C.D. Cal.), ECF No. 24 at 8. And *Soular* and *Lennartson* did not involve alleged prerecorded messages.

Fifth, Plaintiff's argument that CHW's disclosure was somehow "hidden" (PageID.267) is

9

unsupported by relevant legal authority and is factually inaccurate. On the one hand, screenshots of the various webforms in the SAC—only one of which is supposedly from Plaintiff's cellphone using the same form he purportedly used to opt-in—are seemingly presented in such a way so as to obscure the disclosure. *E.g.*, PageID.169-170 & 171-172, ¶¶ 109 & 112 (minimized windows). On the other, while the number keyboard on a smartphone may ***temporarily*** block the disclosure, even a cursory analysis of the opt-in website Plaintiff allegedly used, which is cited in the SAC and the Court may properly consider here,[10] shows the keyboard ***disappears*** when the number is entered and prior to the submit button being pressed when completed on most smartphones. *See also Lundbom v. Schwan's Home Serv., Inc.*, 2020 WL 2736419, at *5 (D. Or. May 26, 2020) ("clear and conspicuous" is not a "user-dependent inquiry" but an objective "reasonable consumer" standard).

Sixth, as the Motion demonstrates, Plaintiff's SAC omits his prior allegation that he informed CHW that he was "rejecting" CHW's offer to add him to its internal DNC list. *See* PageID.229. While Plaintiff incorrectly argues in his Opposition that his "previous complaints have no legal relevance," the fact that this contradictory allegation—which, along with others in the SAC, shows Plaintiff did not ***clearly*** revoke any consent he may have provided, as the TCPA requires[11]—was purposefully omitted from the SAC is telling, as it is a classic example of a "sham" allegation.

## III. PLAINTIFF FAILS TO PLEAD PLAUSIBLE §227(C) CLAIMS.

Plaintiff's counterarguments regarding his §227(c) claims (i) ignore or misconstrue CHW's

---

[10] *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999) (courts may consider documents referred to in the complaint and where central to the plaintiff's claim under 12(b)(6)); *Couponcabin LLC v. Savings.com, Inc.*, 2016 WL 3181826, at *2 (N.D. Ind. June 8, 2016) (considering website cited in complaint central to plaintiff's claims).

[11] Plaintiff mischaracterizes the 2015 FCC Order on this point. *See* 30 F.C.C. Rcd. 7961 ¶¶ 63, 67, 70 ("consumers may revoke consent in any manner that ***clearly*** expresses a desire not to receive further" calls/texts and "the TCPA requires only that the called party ***clearly*** express his or her desire not to receive further calls") (emphasis added). *See also Cataldi v. Ocwen Loan Servicing, LLC*, 2017 WL 5903440, at *1 (E.D. Mich. Nov. 30, 2017) (expressly concluding a "clear revocation" is required under 2015 FCC order). Plaintiff provides no contrary authority.

arguments and authorities, (ii) address issues not raised in the Motion, (iii) are improperly based on argument and not facts pled in the SAC, or (iv) repeat the same arguments as to his §227(b) claims.[12] Certain additional arguments Plaintiff raises include:

<u>First</u>, Plaintiff's suggestion a consumer-initiated transactional/informational call magically transforms into "telephone solicitation" call *immediately* upon a "do-not-call" request (PageID.271) is non-sensical and contrary to law, as the TCPA provides that such requests must be honored in a "reasonable time" not to exceed 30-days, which the FCC ruled means "***within a few days or weeks.***" 47 C.F.R. § 64.1200(d)(3); 18 F.C.C. Rcd. 14014, ¶ 94 (2003) (emphasis added).

<u>Second</u>, Plaintiff only pays lip service to Sixth Circuit's binding *Charvat v. GVN* opinion. *See* PageID.276. But what Plaintiff does not acknowledge is that courts applying that decision have held that the internal DNC regulations do <u>not</u> prohibit "actually calling an individual after the individual has requested placement on a [DNC] list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." PageID.232, n.18 (quoting *Charvat v. DFS Servs.*). In other words, an internal DNC violation <u>only</u> stems from "the initiation of the phone call without having [first] implemented the minimum procedures" ***and <u>not</u> for any other reason***—*e.g.*, failing to provide a written policy, the contents thereof, employee training, not honoring a request, etc. *Id*. (quoting *Charvat v. GVN*). Moreover, the Motion demonstrates how Plaintiff's internal DNC claim (i) is entirely speculative and based on one call where he impatiently hung up on a CHW representative, occurring several weeks after the last at-issue call or text and days before filing suit, (ii) is contradicted by his prior allegation that he "reject[ed]" an offer to be put on CHW's internal DNC list, and (iii) is further contradicted by allegations suggesting an internal

---

[12] For example, whether Plaintiff is a "residential telephone subscriber" under the TCPA or was on the DNC registry are not addressed (but not conceded) in the Motion. And, as discussed above, the at-issue calls were not "telephone solicitations" so no consent was needed and, nevertheless, Plaintiff provided his "prior express invitation or permission" through CHW's form. *See* n.9, *supra*.

policy was in place, in that he was told it would take 14 days to honor his request and that CHW had an opt-out procedure in place; and therefore it does not pass muster under Rule 12(b)(6). PageID.231-232 (citing *Laccinole* and *Perrong*). Plaintiff's Opposition provides no contrary authority and merely makes perfunctory arguments or restates his allegations.

## IV.     COUNT II IS DUPLICATIVE OF COUNT I.

Plaintiff argues Counts I and II are merely "pled in the alternative" and not duplicative. PageID.269. The SAC gives no indication Count II is "pled in the alternative" to Count I. Indeed, Plaintiff does not allege which of the at-issue calls he asserts is subject to liability under which Count or that different at-issue calls are subject to liability for different reasons. Instead, he alleges <u>all</u> the at-issue calls were made without the requisite consent. PageID.166, ¶ 96; PageID.176, ¶ 135. And both Counts contain the same legal elements because they are brought under the same TCPA subsection, §227(b)(1)(A)(iii). *See also* PageID.234 (citing *Eldridge* (striking redundant revocation class, noting §227(b) "does not distinguish between consumers who have requested to stop receiving calls and consumers who never consented in the first place")). Plaintiff also ignores that courts have routinely dismissed or stricken separate "revocation" counts as duplicative of "no consent" counts under Rule 12. *See* PageID.233 (citing *Amann, Charvat, Lutman*). Moreover, the Opposition <u>concedes</u> this point. *See* PageID.270 ("Plaintiff agrees that one call cannot constitute two violations of § 227(b)"); *id.*, n.8 ("Plaintiff could, in theory, plead this is as a single count, with a more generalized Count I"). Consequently, Count II is clearly duplicative.

## V.     **THE SAC SHOULD BE DISMISSED WITH PREJUDICE.**

The SAC should be dismissed with prejudice, as Plaintiff's Opposition does not address (thus concedes) CHW's request for a dismissal with prejudice, and the SAC represents Plaintiff's ***third*** bite at the apple, having ***twice amended*** while having the benefit of CHW's prior dispositive motion

outlining the many defects in his prior pleadings when doing so.

## VI. PLAINTIFF'S IMPROPER ALLEGATIONS SHOULD BE STRICKEN.

Lastly, local briefing limits do not permit CHW to fully address the many flaws in Plaintiff's counterarguments to CHW's alternative motion to strike his improper allegations. Yet, as is apparent, his Opposition mischaracterizes his own allegations, invents new allegations, ignores or misconstrues CHW's authorities and arguments, and/or misconstrues his authorities. The Court should reject these defective arguments on their face, because it is clear his class allegations are uncertifiable as pled, his "superfluous historical" allegations are immaterial and have nothing to do with *his specific* claims against CHW in *this* case, courts in the Sixth Circuit routinely strike such improper allegations at the pleading stage, and Plaintiff does not demonstrate otherwise.

Dated: September 7, 2021

Respectfully submitted,

By: /s/ A. Paul Heeringa
John W. McGuinness (*pro hac vice* to be requested)
A. Paul Heeringa
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin St., Suite 2600
Chicago, IL 60606
312.529.6300
Email: jmcguinness@manatt.com
pheeringa@manatt.com

*Attorneys for Defendant CHW Group, Inc., d.b.a. Choice Home Warranty*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(b)(i)

I hereby certify that, in accordance with LCivR 7.2(b)(i), the foregoing supporting dispositive motion brief contains **4,296** words, include headings, footnotes, citations and quotations, but not including the case caption, cover sheets, table of contents, table of authorities, the signature block, attachments (including this certificate), exhibits, and/or affidavits. The brief was generated using Microsoft Word, Office 365 Edition.

*/s/ A. Paul Heeringa*
A. Paul Heeringa

## CERTIFICATE OF SERVICE

I hereby certify that, on September 7, 2021, the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docket.

*/s/ A. Paul Heeringa*
A. Paul Heeringa